Judge Schroeder, Judge Callahan, Judge Lucero, good morning. May it please the court, my name is David Porter, and I'm with the Federal Defender's Office in Sacramento. I represent the appellants Julian Jesus and John Paul Reynoso, whose mother is present in court this morning. This court in Johnson v. Vasquez declared, when there is reason to believe that there is a racial motivation for the challenge, neither the trial courts nor we are face value a list of neutral reasons that are either unsupported by the record or refuted by it. Any other approach leaves Batson a dead letter. In this case, the prosecutor used two of his four peremptory challenges to challenge two Hispanic jurors living in the country. Which of the two jurors do you believe present the stronger case for you? Elizabeth G, Your Honor, we believe the challenge against Elizabeth G represents the strongest challenge. That's the one on education or those comments? That's correct. All right. That is correct. The prosecutor, depending on how you looked at it, gave two or three reasons for challenging her. He said because she was a customer service representative, we believe she does not have sufficient education. And the other reason, he said, was because she seemed not to be paying attention or involved in the process. Well, I have a question, because time-wise, even though it's – she was not challenged immediately, and the prosecutor passed over her several times before ultimately exercising a peremptory, correct? Yes. So there – isn't there – couldn't there be an inference in the record that that gave the prosecutor a longer period of time to watch this juror? And, you know, I mean, those of us that have been trial lawyers or trial judges know that, you know, sometimes someone can hold that for a while, but then they start, you know, rolling their eyes and sleeping and doing things along those lines. Absolutely, Your Honor. But I think the important thing to note here is that the defense attorney immediately challenged that observation of the prosecutor and said, I did not observe her being inattentive. The trial judge in this case did not make any factual findings about the demeanor aspect of the prosecutor's challenge. And it's very clear under Snyder v. Louisiana that, therefore, the great deference normally afforded trial court decisions in those situations is not applicable. Well, the Supreme Court didn't agree with – the California Supreme Court didn't agree with you on that one, though, right? Because the California court of appeal reversed, and then the California Supreme Court reversed the California court of appeal, right? That's true. And the United States Supreme Court has spoken about what kind of deference is now afforded, and we, of course, follow that. Did the prosecutor ask for a finding on demeanor? No, he did not. What is the – or, Senator, review where the district court, upon a failure to request a ruling, fails to make a ruling? Well, this is – Do we review? Do we review de novo? Well, what – on what basis do we review? This case is a brief – I think may clear is de novo review for several reasons. First of all, there was the improper use of the systematic exclusion test by the State courts. Secondly, there was the failure to use the – No, I'm talking on the inattentiveness issue. On that, it's still de novo. There is no ADPA deference accorded to that because of the failure to use the correct legal test. Are you familiar with a case, Kessler v. Cambra? Yes, I am. Tell us about that case. That was an en banc decision of this court where a Native American prospective juror was challenged by the prosecutor for several reasons, one of – the primary one of which was that she appeared to be arrogant. He also commented about – And the issue that is of relevance here is the date at which Miller L. is afforded – applies in the – on the question of affording deference. Here's what I have on that. The court at page 35 said that the court in Miller L. applied comparative juror analysis to a case tried in 1986, remanded it for a Batson hearing in 1988, and then it was appealed under ADPA in 2000. And in Miller L., the law then was clearly established for ADPA purposes by the time of the last reasoned state court decision in Miller L. handed down in 1992. Now, does that mean then that after 1992, the law in the Ninth Circuit was clearly established? Coming from the Tenth, would you enlighten me on that, please? Okay. The challenge in this case was in 1999. That was when the trial was. Our case, yes. Yes. And so the fact that the Miller L. was clearly established Supreme Court law, at least by the time of the last reasoned state court decision, when Miller L. was handed down in 1992, means that this case clearly qualifies having come down a year before the 2000 ruling. This clearly established Federal law required comparative juror analysis at the time of this trial in 1999. And a ruling below is not afforded deference, then, to the contrary. That's correct. And I think the main telling point is the other side has not disputed this at all. There's no argument on the other side that ADPA deference should be afforded this, and there are five cases, Panetti v. Quarterman of the United States Supreme Court, Polino v. Harrison, Polino v. Castro, Fernandez v. Castro, Cooperwood v. Canberra, Green v. Lamarck, and Williams v. Runnell, which all say when the improper legal tests are applied, no AEDPA deference is afforded. De novo review is required. But are you saying that the government in this situation says there's no ADPA deference? Absolutely. Absolutely. You can search far and wide in the government's brief for any argument about AEDPA deference, and there is none. And it's because the law in this circuit is so very clear. And the United States Supreme Court has said in Panetti v. Quarterman that when an incorrect legal ruling applies, the antecedent question is determined de novo. That's absolutely clear. Did the court of appeals get it right? Court of appeals get it right? There was a 3-0 published decision of the California court of appeal that got it absolutely right. What they said was that the prosecutor's reason about the customer service representative complete speculation that that meant that she didn't have enough educational experience. So what is your strongest argument that the prosecutor's exclusion of Elizabeth G. from the jury was racially motivated? What's your strongest argument? The strongest argument is that we have a completely speculative reason being given by the prosecutor that she was inexperienced because she was a customer service representative. And in relation to the comparative juror analysis, when you look at five of the white jurors who remained on the jury who were not challenged by the prosecutor, we had a farmer. Dave C. was a farmer and pharma service person. Tracy D. was a mother and housewife. Jimmy C. was a worker for a dairy processing plant. John G. was a field man for a packing house. And Kenny D. was a farmer. All these people have presumably low-skilled jobs and the prosecutor didn't. Except for the housewife. You could have a mother, a stay-at-home mom as a Ph.D. Absolutely. And we can have a customer. That's not your stereotyping the very way you want us not to stereotype. Absolutely. And that's why I say presumably. She could be Ms. Elizabeth G. could have been a customer service representative for Apple and had degrees in software. Absolutely. This was based on complete speculation. But when we go to the comparative juror analysis, well, the prosecutor, if his reason were his genuine reason, he would have asked questions about their lack of educational experience, presuming from their job descriptions that they might not have enough educational experience. But he challenged the Hispanic and only the Hispanic on that ground. Okay. You have about a minute left. I'd like to reserve the rest of my time. Thank you. May it please the Court. My name is Tammy Krenzen and I represent the Appelli Warden Hall. This case does not present the exceptional circumstances in which we do not give deference to a trial court's ruling. The prosecutor gave two race-neutral reasons for striking Elizabeth G., and the trial court accepted both of those reasons as race-neutral. Well, now, let me just so that I understand your position. Do you agree with the Reynoso's that the state courts erred by not conducting a comparative jury analysis in this case? Are you asking about the deference with the... Was that error? Was that error? That is error. All right. Is there... Do they get any epidefference here? Do you get any... Are you not offering... Are you arguing there's no epidefference here? Well, the district court... We're not challenging the district court's finding. We argued below that there should still be deference to the trial court's factual findings, but the district court found that it was de novo review, and we're not challenging that. And the standard is, as was established in Hernandez v. New York, that whether a trial court's ruling is clearly erroneous. And in this case, the trial court's ruling was not clearly erroneous. Based on... When you look at the totality of the circumstances, the prosecutor gave his reasons clearly and without hesitation. He did not strike all of the Hispanic jurors that were on the panel, and he struck her, which, as the district court found, strongly suggests that after looking, watching her and viewing her, that her attentiveness became a concern, and then coupled with her lack of education, that he believed that she was of concern, and he challenged her at that point. I also want to note, although it's not a deciding factor, when we look at the totality of the circumstances, this was a situation where the victim and the defendants were of the same race. It wasn't a situation where we've had in some of the other cases where it's more suspect when you have members of the defendant's race excluded and they're different from members of the victim's race. I'm a little unsure about what your position is on this epideference. Are you saying that Kessler v. De Novo is the point at which people are on notice in the Ninth Circuit as to Miller L.? The consequences of Miller L.? Certainly in this case, it was not argued that there was not awareness of the consequences because of the time frame when this was decided. Well, two questions flow from that for me, then. If we are to review De Novo, how do we review the issue of inattentiveness, De Novo? It seems to me that unless there's something in the record that has not been brought to our attention, that there's not much there for us to review. Well, in Hernandez v. New York, the Supreme Court said that you look at whether the trial court's ruling is clearly erroneous. And in this situation, the trial court found that both reasons were race neutral. There's nothing in this record to refute that that wasn't a legitimate reason. We assume that that we imply that that ruling subsumed the ruling on the merits. That is to say that, yes, the juror was inattentive. We give trial courts deference when they don't make detailed factual findings about – and let me back up and say he did make a factual finding. It's just he did not state all the reasons for that factual finding. We assume the judge made the credibility determination he was supposed to make because he said I credit those reasons. Now, he didn't further go on and state that. But this is a different situation than Snyder v. Louisiana when the Supreme Court wasn't even sure that the trial court had ruled on the demeanor. It said it could have completely followed the other justification and not even made a finding on credibility. Here we know that the trial court did accept both of the reasons as race neutral. And given the timing of this, an inference can be drawn that her lack of attentiveness came later in the proceeding, and that became the concern. I think Judge Schroeder had a question, but if I may. Go ahead. If we spot you, as one of my colleagues says, the point that inattentiveness is race neutral, we still have the question as to whether the district court made – and that's the question, the trouble, the one I'm struggling with, is how do we review that? Well, I don't think the trial court actually had – the trial court said I accept both – I accept those reasons as not based on ethnicity or race. And you're saying that implies that he found that there was inattentiveness. That he accepted the reason. I mean, this court in Rice v. Collins did not find – it was a situation where the prosecutor said that the juror was rolling her eyes. The court specifically said I did not see that. But that was still – yes, that was under the AADPA, but that was still given deference, that finding, just because the trial court didn't see it. So I don't think we have to have a situation where the trial court says, I saw that, I observed that, and gives the reasons for that. The fact of the matter is that the trial court said accepted the challenge for both reasons as race neutral. And that sets it apart from Snyder v. Louisiana, although the appellant doesn't think it's a distinction without any merit, that it does – it is different because the Supreme Court specifically said in Snyder that they couldn't even tell that that was credited as the reason for accepting the challenge. It could have been completely on the other justification, which was refuted by the record. In this situation, all the courts that looked at this have said that there was nothing that contradicted the prosecutor's stated reasons. And in each of the cases that the appellant has cited, the record actually refuted the reasons. And that's what sets this – What say you about the educational – the comparative educational analysis? I think the district court got it right. The district court said that although comparative analysis may have shown that other jobs could have – there could have been a lack of education, no one presented the same impression as a customer service representative who had been at the same job for eight and a half years. And the point of the matter is it doesn't matter if we sit here and say we think that's objectively unreasonable, we think that it's not plausible. I don't find it objectively unreasonable so much as I find it baffling. I mean, how can you say that somebody who was a customer representative necessarily is less educated than any of the other trades and professions that were – that were advanced here, a farmer, a rancher? I mean – The issue is whether the prosecutor subjectively was genuine. And based on the totality of the circumstances, it doesn't appear that he was not genuine. It's not any more baffling than saying in Perquette v. Ellum, saying someone's long, unkept hair makes them not trust – the prosecutor didn't trust that person. It's not any more concerning than that. And the standard is whether the prosecutor subjectively believed it. And when you look at the totality of the circumstances – Subjectively believed what? Subjectively believed that there was a lack of education. And again, there wasn't just that – I'm not sure that would give any basis for that. Other than that, do we know who the person worked for or anything else about the person other than customer service representative? Because we expect when we call up and want to speak to a customer service representative, we get somebody who's fairly intelligent and responsive. Well, I think everyone's experience might be different with that. But we expect. We hope. And maybe the prosecutor's experience had been different. I mean, again, it's – but that's not – and that's coupled with another reason. It wasn't – lack of education was not the only reason. And he said inattentiveness. And he passed on her 14 times. I mean, and again, it's not any more unreasonable than saying somebody with long, unkept hair – Does the fact that the prosecutor passed 14 times before excusing the juror, is that a factor that you feel works in your favor in finding deference to the trial court? Yes. Although the other side has argued it works in their favor, the inference can be drawn from that, as the district court said, that it wasn't until there was a lack of inattentiveness that there was a concern. And when you're – the standard is whether the trial court's ruling is clearly erroneous. If there's an inference to be drawn in favor, then we should draw that inference in favor of the trial court's ruling. And in some – if there aren't any further questions, just say that based on the totality of the circumstances in this case, this is not the exceptional case in where we don't give deference to the trial court's ruling. Thank you. It's just odd that neither of the higher courts did it right. One of them disagreed with it, and one of them didn't do the analysis correctly. Certainly. And then the district court looked at it, too, and agreed that the deference should be given to the trial court. That's where we get the big dollars to decide the cases, right? Okay. Thank you. The deputy attorney general said that there should be deference to this implied finding. This is directly contrary to Snyder v. Louisiana. Here is what the trial court said in this case. And I accept those reasons as being not based on race or ethnicity, and I don't find that there has been a violation of Wheeler and that there was not a systematic exclusion of a recognized ethnic group, i.e., Hispanics in this case, so the motion is denied. Search far and wide, you will not find a factual determination in that finding. That is a legal conclusion. And it is a legal conclusion based on the wrong standard of systematic exclusion. That trial judge using that standard might very well have thought the excuse against the challenge against Maria Lopez, the first challenge, was fine. There was no discrimination in that. And even though there was discrimination in the challenge against Elizabeth G., because there's been no systematic exclusion of Hispanics, the motion is denied. That very well could have been his thinking. But even if it's not, it's very clear under Snyder v. Louisiana that there's no kind of deference given to implied findings when there is a dispute about the demeanor. And, therefore, we ask that this Court reverse the decision of the district court and remand with instructions to grant the writ of habeas corpus. Thank you. The time has expired. The case just argued is submitted for decision.
judges: Lucero, Schroeder, Callahan